T.C. Memo. 2001-241


UNITED STATES TAX COURT


CARALAN TRUST, ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 10151-99, 10152-99,      Filed September 17, 2001.
       10153-99, 17074-99,
       17075-99, 17076-99.


     R attributed to P1 and P2, both joint return
filers, various items with respect to certain trusts,
P3, P4, P5, and P6, on the grounds that such trusts
were either shams or grantor trusts, or on the ground
that the assignment of income doctrine applied.  R also
claims that P2 failed to report certain nontrust items
of income.  R determined a sec. 6662(a), I.R.C.,
accuracy-related penalty against each P.  At trial, R

---

     [1]  Cases of the following petitioners are consolidated
herewith:  Alexion Trust, docket No. 10152-99; Joseph and Frances
Shirley, docket No. 10153-99; Curtis E. and April L. Shirley,
docket No. 17074-99; C E Shirley Trust, Marcia Doerr, Trustee,
docket No. 17075-99; and Congo Trust, Marcia Doerr, Trustee,
docket No. 17076-99.

moved for penalties on account of delay and for other reasons, under sec. 6673(a)(1), I.R.C. Trusts P3, P4, and P5 concede all adjustments and the accuracy-related penalty. R concedes items of P3, P4, and P5 taxed to either P1 or P2 and certain other items of P1 and P2.

1. Held: Deficiencies and accuracy-related penalty with respect to P3, P4, and P5 sustained, subject to concession by R.

2. Held, further, P6 has failed to establish that there is a proper party before the Court; we shall dismiss with respect to P6 for lack of jurisdiction.

3. Held, further, P1 understated gross income by $166,042 on account of gross receipts of P3 attributable to them under assignment of income doctrine.

4. Held, further, P1 failed to substantiate depreciation deduction of $19,866 apportioned to them by P4.

5. Held, further, P1 are liable for accuracy-related penalties under sec. 6662(a), I.R.C.

6. Held, further, P1 are liable for a penalty under sec. 6673(a)(1), I.R.C.

7. Held, further, P2 omitted from gross income interest of $425, bank deposits of $33,890, and income from services of $2,470.

8. Held, further, P2 are liable for accuracy-related penalties under secs. 6662(a) and 6673(a)(1), I.R.C.

9. Held, further, P2 are liable for a penalty under sec. 6673(a)(1), I.R.C.


Noel W. Spaid, for petitioners.

Jeremy L. McPherson and Neal O. Abreu, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, Judge: These consolidated cases involve determinations by respondent of deficiencies in, and penalties with respect to, the Federal income tax liabilities of the

following taxpayers, in the following amounts, for the 1995
taxable (calendar) year of each:

| Docket No. | Taxpayer(s) | Deficiency | Sec. 6662(a) Penalty |
|---|---|---|---|
| 10151-99 | Caralan Trust | $55,935 | $11,187 |
| 10152-99 | Alexion Trust | 70,329 | 14,066 |
| 10153-99 | Joseph & Frances Shirley | 77,483 | 15,497 |
| 17074-99 | Curtis E. & April L. Shirley | 25,306 | 5,061 |
| 17075-99 | C E Shirley Trust | 25,249 | 5,050 |
| 17076-99 | Congo Trust | 3,978 | 796 |

These cases are related in that, under various theories,
respondent believes that there is an identity between Caralan
Trust, Alexion Trust, and Joseph and Frances Shirley (sometimes,
the J. Shirleys) and an identity between C E Shirley Trust, Congo
Trust, and Curtis E. and April L. Shirley (sometimes, the
C. Shirleys). The J. Shirleys are the parents of Curtis E.
Shirley. Respondent would attribute the income of the various
trusts to the Shirleys identified by respondent with such trusts.

At the conclusion of the trial in these cases, respondent
moved that the Court impose penalties under section 6673(a)(1),
which provides penalties for procedures instituted primarily for
delay and for other reasons.

Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year at issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure. For convenience, monetary amounts have been rounded
to the nearest dollar amount.

Trust Cases

As a preliminary matter, we must decide whether we should dismiss the four cases in which the taxpayer is a trust.[2] When these consolidated cases were recalled from the calendar of the trial session of this Court commencing on June 5, 2000, in San Francisco, California, the Court, on its own motion, questioned its jurisdiction to consider the petitions relating to Caralan Trust and Alexion Trust because of the lack of a proper party before the Court. Respondent moved to dismiss for lack of jurisdiction with respect to C E Shirley Trust and Congo Trust. On June 14, 2000, following proceedings in which counsel established Ivan Oviedo, Joseph Shirley, and Curtis Shirley as trustees for Caralan Trust, C E Shirley Trust, and Alexion Trust, respectively, and we concluded that we did have jurisdiction in those cases, we ordered that one motion for substitutions of parties and changes of caption be made with respect to such trusts. Such motion was due on July 14, 2000. Also on June 14, 2000, the Court ordered that a motion for substitution of party and change of caption be made with respect to Congo Trust, such motion to be accompanied by a memorandum of law setting forth the grounds for establishing the substituted party as a trustee. Such motion and memorandum also were due on July 14, 2000. Neither motion (nor the memorandum of law) was received as

_____

[2] Docket Nos. 10151-99, 10152-99, 17075-99, and 17076-99.

ordered. On January 30, 2001, the Court received an improper document entitled "Motion for Leave to Ratify Proper Parties" (the January 30 communication), stating:

> Petitioners, by and through their counsel, move the court pursuant to Rule 60(a) that the Court found [sic] that the Trustees in the above entitled case[s] were properly before the court * * *

> Marcia Doerr was the proper successor Trustee for the trusts that is [sic] presently before the court and the pleading be amended to add Marcia Doerr to be the proper successor trustee and party before the court.

By order dated February 15, 2001 (the February 15 order), we answered the January 30 communication. We stated our assumption that it was a tardy attempt to comply with our two orders of June 14, 2000. We stated that we found it confusing, since, rather than identifying as trustees of Caralan Trust, C E Shirley Trust, and Alexion Trust, Ivan Oviedo, Joseph Shirley, and Curtis Shirley, respectively, it appears to ask the Court to ratify Marcia Doerr as trustee of each trust. We extended the time to comply with the June 14 orders, and cautioned that, unless there was full and timely compliance, we would assume that, with respect to Caralan Trust, C E Shirley Trust, and Alexion Trust, the named individuals (Ivan Oviedo, Joseph Shirley, and Curtis Shirley) no longer wished to be substituted as parties. We stated that, unless there was full and timely compliance, we might dismiss some or all of the trust cases for lack of jurisdiction.

In response to the February 15 order, we received "Motion for Substitution of Parties and Change of Caption, and Motion to Dismiss for Lack of Jurisdiction" (the motion), along with an accompanying memorandum.  In pertinent part, the motion states:

> Petitioners, by and through their counsel, move the court pursuant to Rule 63 of the Tax Court's Rules of Practice and Procedure, to substitute Ivan Oviedo as trustee of Caralan Trust, Joseph Shirley as trustee of C.E. Shirley Trust, and Curtis Shirley [as trustee] of Alexion Trust.
>
> Alternatively, counsel is informed that the trustees do not wish to pursue this matter further, and request that the petitions be dismissed for lack of jurisdiction where the petitions did not state that the trustees authorized a representative to act on behalf of the trusts as required by case law.  * * *

While we find the motion somewhat confusing, the following are among the proposed findings of fact in petitioners' brief:

> The petitions do not allege jurisdictional facts that the petitions were filed by some person authorized to act in behalf of the Petitioners.  * * *
>
> The evidence presented at the trial did not authorize the filing of petitions on behalf of Caralan, Alexion, C E Shirley, and Congo Trusts.  * * *

In their brief, petitioners make the following statement: "Petitioners also have not affirmatively established all required facts giving rise to the jurisdiction of the Tax Court".  In their brief, petitioners make the following argument concerning jurisdiction:

> Petitioners have the burden of proving that this Court has jurisdiction by affirmatively established [sic] all required facts giving rise to the jurisdiction of the Tax Court.

In this case Petitioners concede that they have not authorized someone to act on their behalf, and have not affirmatively established all required facts giving rise to the jurisdiction of the Tax Court.

Therefore, the Tax Court lacks the required requisite jurisdiction and must deal with this issue regardless of whether the issue is raised by either party. * * *

With respect to Congo Trust, petitioner has failed to establish that there is a proper party before the Court, and, for that reason, we shall dismiss for lack of jurisdiction. See, e.g., Photo Art Mktg. Trust v. Commissioner, T.C. Memo. 2000-57. With respect to Caralan Trust, C E Shirley Trust, and Alexion Trust, in reliance on the motion (and on our earlier conclusion that counsel had established jurisdiction), we shall substitute Ivan Oviedo, Joseph Shirley, and Curtis Shirley, respectively, as party and change caption. In reliance on the statement in the motion that counsel is informed that the trustees do not wish to pursue this matter further, we shall consider that a capitulation by each petitioner trustee to respondent's position in his case. Respondent's position is that the income of the Caralan Trust and Alexion Trust is taxable to the J. Shirleys, and the income of the C E Shirley Trust and Congo Trust is taxable to the C. Shirleys. On brief, respondent states that, if the Court so finds, then respondent would concede that there are no deficiencies in tax or section 6662(a) penalties due from any of the trusts. Since we find, in essence, as respondent has

requested, we believe that respondent's concession eliminates any deficiencies or section 6662(a) penalties with respect to the trusts. We impose no penalties under section 6673(a)(1) against the trusts. (We have imposed substantial penalties under that section against the    J. and C. Shirleys, which should serve as a deterrent to them again trying to avoid tax as they have done here.)

Remaining Issues

The remaining issues concern the J. and C. Shirleys. Those issues are as follows:

Whether the J. Shirleys understated their gross income for 1995 by omitting (1) $179,791 of gross receipts reported by Alexion Trust and (2) $4 of interest and $42,000 of gross income reported by Caralan Trust.

Whether, for 1995, the J. Shirleys are entitled to deduct $19,896 of depreciation apportioned to them by Caralan Trust.

Whether the J. Shirleys are liable for self-employment tax for 1995 allocable to Joseph Shirley (and are entitled to a related deduction) on account of the omitted gross receipts of $179,791.[3]

---

[3] The amount of petitioners' liability for self-employment tax and the amount of the deduction under sec. 164(f) to which petitioners are entitled are computational matters, the resolution of which will depend upon our disposition of the other issues. The J. Shirleys have not separately challenged such liability and deduction, and we shall not further discuss those

(continued...)

Whether the exemptions claimed for 1995 by the J. Shirleys must be reduced on account of any increase in their adjusted gross income.[4]

Whether the J. Shirleys are liable for penalties under sections 6662(a) and 6673(a)(1).

Whether the C. Shirleys understated their gross income for 1995 by omitting $25 of interest income, $33,980 of unreported deposits, and $2,470 of business income.

Whether the C. Shirleys further understated their gross income for 1995 by omitting (1) $65,951 of gross receipts attributed to them from C E Shirley Trust and (2) $12,000 of rent reported by Congo Trust.

Whether the C. Shirleys are entitled to a deduction for 1995 for unreimbursed expenses related to Congo Trust.

Whether the C. Shirleys are liable for self-employment tax for 1995 allocable to Curtis Shirley (and are entitled to a related deduction) on account of the omitted unreported deposits of $33,980.[5]

_____

[3](...continued)
items.

[4] This also is a computational matter, which the J. Shirleys have not separately challenged, and we shall not further discuss it.

[5] As with the J. Shirleys, the amount of petitioners' liability for self-employment tax and the amount of the deduction under sec. 164(f) to which petitioners are entitled are
(continued...)

Whether the C. Shirleys are liable for penalties under sections 6662(a) and 6673(a)(1).

## FINDINGS OF FACT

Some facts have been stipulated and are so found. The stipulations of facts filed by the parties, with accompanying exhibits, are incorporated herein by this reference. The J. Shirleys are deemed to have admitted certain facts on account of their failure to respond to respondent's request for admissions. See Rule 90(c). Such facts deemed admitted are conclusively established for purposes of this action (with respect to the J. Shirleys) and are incorporated herein by this reference.

### Residences

The J. Shirleys and C. Shirleys resided in California when their petitions herein were filed.

### Respondent's Examinations

Prior to determining deficiencies in both the J. and C. Shirleys' 1995 taxes, respondent examined their 1995 Federal income tax returns. In the course of that examination, respondent's agent requested a meeting with the J. and C. Shirleys, at which they were to produce books and records used to

[5](...continued)
computational matters, the resolution of which will depend upon our disposition of the other issues. The C. Shirleys have not separately challenged such liability and deduction, and we shall not further discuss those items.

prepare their 1995 returns, bank statements, and similar documents. Joseph and Frances Shirley and Curtis Shirley appeared for the meeting but did not produce the requested documents. They refused to answer respondent's agent's questions, responding to her questions with questions and a questionnaire of their own. They refused to give respondent's agent a copy of that questionnaire.

The J. Shirleys

The J. Shirleys made a joint return of income for 1995 (the J. Shirleys 1995 return). In that return, they reported $4 of interest and $13,749 of "NonPassive Income", both from Caralan Trust, and claimed a depreciation deduction, in the amount of $19,896, on account of property owned by Caralan Trust; they also claimed a standard deduction of $6,550 and a deduction of $5,000 for personal exemptions. They reported no other items of income, loss, or deduction. They reported zero taxable income. Joseph Shirley reported his occupation as "consultant".

For an indeterminate number of years prior to 1995, the J. Shirleys reported on their Federal income tax returns that one or both was engaged in the computer consulting business. During those years, they paid self-employment taxes on the net profits of that business.

Alexion Trust

Alexion Trust is a trust created by the J. Shirleys. Alexion Trust was created on September 1, 1994.  In 1995, Caralan Trust was the sole beneficiary of Alexion Trust.

In 1995, one or the other, or both, of the J. Shirleys had signatory authority over Alexion Trust's bank accounts.  The J. Shirleys used such bank accounts to pay certain of their personal expenses in 1995.

For 1995, Joseph Shirley made a return of Federal income tax for Alexion Trust on Form 1041, U.S. Income Tax Return for Estates and Trusts (the Alexion Trust 1995 return).  He signed that return as a fiduciary.  In that return, Alexion Trust reported gross receipts of $179,791 from an activity described as computer consulting.  It reported various expenses related to that activity, including $42,000 claimed for the rental of business property.  It reported no expense for wages.  After deducting expenses totaling $78,260, it reported a net profit of $101,531 from such activity.  From that reported net profit, it deducted a claimed charitable contribution of $94 and reported "Adjusted total income" of $101,437.  From such adjusted taxable income, it deducted $101,437 on account of an income distribution to Caralan Trust.  After taking into account a deduction of $100 for a personal exemption, it reported a loss of $100 and no income tax due.

One or both of the J. Shirleys personally performed all or substantially all of the consulting services generating the gross receipts of $179,791 reported by Alexion trust.

Caralan Trust

Caralan Trust is a trust created by the J. Shirleys. Caralan Trust was created on September 1, 1994. In 1995, the J. Shirleys and C E Shirley Trust were the beneficiaries of Caralan Trust.

In 1995, one or the other, or both, of the J. Shirleys had signatory authority over Caralan Trust's bank accounts. The J. Shirleys used such bank accounts to pay certain of their personal expenses in 1995.

For 1995, Joseph Shirley made a return of Federal income tax for Caralan Trust on Form 1041, U.S. Income Tax Return for Estates and Trusts (the Caralan Trust 1995 return). He signed that return as a fiduciary. In that return, Caralan Trust reported as items of gross income $4 of interest and the $101,437 of income claimed as a distribution by Alexion Trust to it. It deducted $24,165 as a loss from a rental activity (the rental activity), and reported total income of $77,276. It further deducted $42 for a claimed charitable deduction, and it reported "Adjusted total income" of $77,234. From such adjusted total income, it deducted $77,234 on account of distributions of income in the amounts of $13,753 and $63,481 to the J. Shirleys and

C E Shirley Trust, respectively.  After taking into account a deduction of $100 for a personal exemption, it reported a loss of $100 and no income tax due.

The property involved in the rental activity was used by the J. Shirleys during 1995 as their personal residence.  With respect to the rental activity, Caralan Trust reported gross income of $42,000 and expenses of $66,165, which gave rise to the claimed rental activity loss of $24,165.  Among the expenses claimed by Caralan Trust in computing that loss were personal expenses of the J. Shirleys.  Caralan Trust also reported (but did not claim in computing adjusted total income) an allowance for depreciation in the amount of $19,896 on account of property that the J. Shirleys used as (and in) their personal residence. The $42,000 reported as rental activity gross income is the same amount claimed by Alexion on the Alexion 1995 return as rent paid for business property.  Caralan Trust reported $19,896 as the J. Shirley's share of the depreciation deduction computed by Caralan Trust.

## C E Shirley Trust

C E Shirley Trust is a trust created by the C. Shirleys. C E Shirley Trust was created on July 1, 1995.

For 1995, Curtis E. Shirley made a return of Federal income tax for C E Shirley Trust on Form 1041, U.S. Income Tax Return for Estates and Trusts (the C E Shirley Trust 1995 return).  He

signed that return as a fiduciary. In that return, C E Shirley Trust reported as an item of gross income the $63,481 deducted by Caralan Trust on account of Caralan Trust's distribution of income to it. In that return, C E Shirley Trust reported that it was in the business of "Computer Consulting". It reported no gross income from that business and claimed a loss of $62,686. It claimed various other small deductions, including a deduction of $236 for income distributed to Congo Trust, and it showed a net loss for the year of $100. It also showed $647 as Congo Trust's share of depreciation computed by C E Shirley Trust.

Congo Trust

Congo Trust is a trust created by the C. Shirleys. Congo Trust was created on July 1, 1995.

For 1995, Curtis E. Shirley made a return of Federal income tax for Congo Trust on Form 1041, U.S. Income Tax Return for Estates and Trusts (the Congo Trust 1995 return). He signed that return as a fiduciary. In that return, Congo Trust reported a real estate rental activity, with receipts (rent) of $12,000 and deductions of $23,101, giving rise to a loss of $11,101. That real estate rental activity was the principal residence of the C. Shirleys. Taking into account a $236 income distribution received from C E Shirley Trust, a deduction of $600 for a charitable contribution, and a $100 exemption, Congo Trust reported a net loss of $11,565. The Congo Trust 1995 return also

showed $8,558 as the C. Shirley's share of depreciation computed by Congo Trust.

The C. Shirleys

The C. Shirleys made a joint return of income for 1995 (the C. Shirleys 1995 return). In that return, they reported no items of income and claimed a deduction in the amount of $10,463 on account of "Unreimbursed Expenses" related to Congo Trust; they also claimed a standard deduction of $6,550 and personal exemptions of $7,500. In calculating taxable income, they reported no other items of income, loss, or deduction. A schedule attached to the C. Shirleys 1995 return shows depreciation of $8,558 from Congo Trust, but no deduction of such depreciation enters into their calculation of taxable income. They reported zero taxable income. Curtis Shirley reported his occupation as "manager".

Curtis Shirley's occupations are computer consultant and headhunter. During 1995, he was self-employed as a computer consultant, performing those services personally, for compensation. During 1995, he did some work under contracts with C E Shirley Trust, as a subcontractor.

In 1995, Curtis Shirley personally performed computer consulting services for Ventana Consulting Solutions (Ventana). Two bank checks, in payment for those services, in the amounts of $1,495 and $975 (total, $2,470), dated December 21 and 28, 1995,

respectively, were issued by Ventana, payable to "C.E. Shirley". Those checks were cashed, having been endorsed: "Curtis E. Shirley", with no qualification (e.g., "For the C E Shirley Trust").

Deposits totaling $33,980 were made to bank accounts of the C. Shirleys during 1995.

## OPINION

### I. Section 7491

In pertinent part, Rule 142(a) provides: "The burden of proof shall be upon the petitioner, except as otherwise provided by statute * * * and except that, in respect of any new matter, * * * it shall be upon respondent." In certain circumstances, if a petitioner introduces credible evidence with respect to any factual issue relevant to ascertaining such petitioner's liability for tax, section 7491 places the burden of proof on respondent. See sec. 7491(a)(1); Rule 142(a). Section 7491 is effective with respect to examinations commenced after July 22, 1998. See Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3001(c)(2), 112 Stat. 727. Respondent concedes that the examinations of the J. and C. Shirleys commenced after July 22, 1998.

Section 7491(a)(2) establishes prerequisites (the prerequisites) to establishing that the burden of proof may lie

with respondent under section 7491(a)(1).  In pertinent part, section 7491(a)(2) provides:

> SEC. 7491.  BURDEN OF PROOF.
>
>     *     *     *     *     *     *     *     *
>
> (2) Limitations.--Paragraph (1) shall apply with respect to an issue only if--
>
>> (A) the taxpayer has complied with the requirements under this title to substantiate any item; [and]
>>
>> (B) the taxpayer has maintained all records required under this title and has cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews; * * *

The burden is on the taxpayer to show that the prerequisites are satisfied.  See H. Conf. Rept. 105-599, at 240-241 (1998), 1998-3 C.B. 747, 994-995.  At trial, counsel for the J. and C. Shirleys maintained that her clients had satisfied the prerequisites.  On brief, however, the J. and C. Shirleys propose no findings with respect to either's satisfaction of the prerequisites, nor do they argue that the prerequisites are satisfied.  We have made findings adequate for us to conclude that they did not cooperate in respondent's examination of their 1995 returns.  The J. Shirleys and, likewise, the C. Shirleys have failed to prove that they have satisfied the prerequisites.  Accordingly, respondent does not on account of section 7491(a) bear the burden of proof with respect to either Shirleys' liability for tax.

Respondent bears the burden of production with respect to penalties. See sec. 7491(c). We further discuss section 7491(c) infra. See sec. II.B.1.

We address infra two questions concerning new matter. See sec. II.A.2.

## II. The J. Shirleys

### A. Deficiency in Tax

#### 1. Introduction

Alexion Trust reported gross receipts of $179,791 from an activity described as computer consulting. After deducting claimed expenses totaling $78,260, including $42,000 paid as rental to Caralan Trust, it reported a net profit from such activity of $101,531. After deducting a claimed charitable contribution of $94 from such net profit, it reported "Adjusted total income" of $101,437. It then deducted that amount on account of an income distribution (in such amount) to Caralan Trust. Caralan Trust reported as income both the income distribution of $101,437 and the rental payment of $42,000 received from Alexion Trust; it also reported $4 of interest income. Caralan Trust computed a depreciation deduction of $19,896 on account of property that the J. Shirleys used as (and in) their personal residence. Caralan Trust deducted $77,234 on account of distributions of income in the amounts of $13,753 and $63,481 to the J. Shirleys and C E Shirley Trust, respectively.

It apportioned the depreciation deduction it had computed to the J. Shirleys. The J. Shirleys reported as gross income $4 of interest and $13,749 of "NonPassive Income", both from Caralan Trust, and claimed a depreciation deduction of $19,896, on account of the depreciation deduction apportioned to them by the Caralan Trust.

Respondent determined a deficiency in the J. Shirleys' tax by notice dated June 1, 1999 (the J. Shirleys' notice). Among the adjustments giving rise to that determination are positive adjustments to the J. Shirleys' gross income of (1) $4 and $42,000 on account of such amounts of interest and gross income, respectively, of Caralan Trust's omitted from their gross income and (2) $179,791 on account of such amount of gross receipts of Alexion Trust's omitted from their gross income. Respondent now concedes all of the first two adjustments and $13,749 of the third adjustment. Respondent concedes the first adjustment because the J. Shirleys reported the $4 of interest attributed to them from Caralan Trust. Respondent also concedes the $42,000 of gross income he attributed to the J. Shirleys from Caralan Trust. Respondent does so based on his attribution to the J. Shirleys of Alexion Trust's gross receipts of $179,791. Such gross receipts, after the deduction of certain expenses (disallowed by respondent), including $42,000 of rent paid to Caralan Trust, were, in the amount of $101,437, treated by Alexion Trust as a

distribution of income to Caralan Trust.  Caralan Trust included in gross income both the $42,000 of rent and the $101,437 income distribution.  Since respondent disallowed Alexion Trust a deduction for the rent paid to Caralan Trust, the same $42,000 would, but for respondent's concession, twice be attributed to the J. Shirleys, given respondent's positive adjustments to their income for both $179,791 of gross receipts and $42,000 of gross income.  Finally, since the J. Shirleys included in gross income $13,749 of income ("NonPassive Income") distributed to them by Caralan Trust, and such distribution is, in turn, a distribution of income received by Caralan Trust from Alexion Trust, respondent concedes that he double counted when he made a positive adjustment to their income on account of Alexion Trust's gross receipts without taking into account the Caralan Trust distribution reported by them.  We accept respondent's three concessions.

Given respondent's concessions, we are left to consider two adjustments:  positive adjustments of $166,042 and $19,896 on account of (1) respondent's attribution of Alexion Trust's gross receipts to the J. Shirleys and (2) respondent's disallowance of the depreciation deduction computed by Caralan Trust and deducted by the J. Shirleys, respectively.  For the reasons that follow, we sustain both such adjustments.

2. Respondent's Adjustments

The J. Shirleys' notice explains respondent's attribution of Alexion Trust's gross receipts to the J. Shirleys as follows: "Based on currently available evidence, the previous examination adjustment has been reversed." It explains the adjustment for depreciation as follows: "Since you have provided evidence to establish your basis in the S-Corporation, you are allowed the loss as claimed on your original tax return." Although such explanations are not clear to us (the explanation with respect to depreciation makes no sense at all), apparently, the J. Shirleys understood respondent's reasons for making those two adjustments. In their petition, the J. Shirleys assign error to respondent's determination of a deficiency and, in support of that assignment, aver that both Alexion Trust and Caralan Trust are valid trusts, and not "abusive trusts", which trusts, established by the J. Shirleys, "were not established to avoid or evade taxes or for any tax-related purpose." They further aver: "All income, expenses, deductions, and distributions which were attributable to those valid trusts were properly and accurately reported by those trusts". They aver no specific facts, however, to support that claim. For example, they aver nothing concerning the employment relationship (if any) between either Joseph or Frances Shirley and Alexion Trust and nothing concerning any contractual relationship between the Alexion Trust and any customer.

In the answer, respondent denies:

> that said trusts were "valid" to the extent that petitioners intend the term to imply that the trusts should be recognized for federal income tax purposes; or alternatively, to imply that the trusts are not grantor trusts; or alternatively, to imply that the income reported by the trusts is not taxable to petitioners under assignment of income principles.

On brief, respondent states the following grounds for attributing gross receipts of Alexion Trust to the J. Shirleys: "on the grounds that Alexion Trust is a sham, or that Alexion Trust is a grantor trust, or that the income of Alexion Trust is taxable to Joseph and Frances Shirley under assignment of income principles." As to the depreciation deduction, respondent states the issue to be whether the J. Shirleys are entitled to the depreciation expense passed through to them from the Caralan Trust.

Apparently, at the time the notice was issued to the J. Shirleys, they and respondent understood respondent's grounds for making the two adjustments in question; both parties filed pleadings and briefs which responded to those adjustments. Rule 142(a) provides that respondent bears the burden of proof with respect to new matters. The J. Shirleys have not claimed that respondent has raised any new matter. We therefore assume that respondent's grounds for making the two adjustments are the grounds articulated by respondent on brief and that they raise no new matter. The J. Shirleys bear the burden of proof. See Rule

142(a); sec. I. <u>supra</u>. They must prove facts establishing that Alexion Trust is neither a sham, a grantor trust, nor that the income of Alexion Trust is taxable to Joseph and Frances Shirley under assignment of income principles. They must prove facts establishing that they are entitled to the depreciation deduction claimed with respect to property of Caralan Trust. They have done neither.

### 3. <u>Discussion</u>

#### a. <u>Alexion Trust Gross Receipts</u>

##### (1) <u>Introduction</u>

Alexion Trust was created by the J. Shirleys on September 1, 1994. The J. Shirleys exercised control over the Alexion Trust, as evidenced by their signatory authority over the trust's bank accounts (out of which they paid their personal expenses) and Joseph Shirley's signature on the Alexion Trust 1995 return as fiduciary. Alexion Trust reported gross receipts for 1995 of $179,791 from an activity described as computer consulting. One or both of the J. Shirleys performed all or substantially all of the consulting services generating such receipts. They reported no income on account of performing such services, and Alexion Trust claimed no deduction for wages paid. Prior to 1995, one or both of the J. Shirleys engaged in the computer consulting business, paying self-employment tax on the net profits of the business. Those facts are sufficient for us to find that the J.

Shirleys had earnings from providing computer consulting services that they failed to include in gross income (and pay tax on).

(2)  Fundamental Principles

A fundamental principle of tax law is that income is taxed to the person who earns it.  See Commissioner v. Culbertson, 337 U.S. 733, 739-740 (1949); Lucas v. Earl, 281 U.S. 111 (1930). Recently, in Barmes v. Commissioner, T.C. Memo. 2001-155, we applied assignment of income principles to tax the income of a business to a taxpayer who had attempted an anticipatory assignment of that income to a trust.  We had this to say:

> Attempts to subvert * * * [the fundamental principle that income is taxed to the person who earns it] by diverting income away from its true earner to another entity by means of contractual arrangements, however cleverly drafted, are not recognized as dispositive for Federal income tax purposes, regardless of whether such arrangements are otherwise valid under State law.  See Vercio v. Commissioner, 73 T.C. 1246, 1253 (1980); see also Schulz v. Commissioner, 686 F.2d 490, 493 (7th Cir. 1982), affg. T.C. Memo. 1980-568.  The "true earner" of income is the person or entity who controlled the earning of such income, rather than the person or entity who received the income.  See Vercio v. Commissioner, supra at 1253 (citing Wesenberg v. Commissioner, 69 T.C. 1005, 1010 (1978)); see also Commissioner v. Sunnen, 333 U.S. at 604 ("The crucial question remains whether the assignor retains sufficient power and control over the assigned property or over receipt of the income to make it reasonable to treat him as the recipient of the income for tax purposes.").  * * *  [Id.]

Pursuant to a second fundamental principle, we may ignore a transfer in trust as a sham where the transfer has not, in fact, altered any cognizable economic relationship between the putative

transferor and the trust property. See, e.g., <u>Zmuda v.</u>
<u>Commissioner</u>, 79 T.C. 714, 719-722 (1982), affd 731 F.2d 1417
(9th Cir. 1984). Recently, in <u>Muhich v. Commissioner</u>, T.C. Memo.
1999-192, affd. 238 F.3d 860 (7th Cir. 2001), we listed the
following factors to be considered in determining whether a trust
lacks economic substance for tax purposes:

> (1) Whether the taxpayer's relationship as grantor to
> the property differed materially before and after the
> trust's formation; (2) whether the trust had an
> independent trustee; (3) whether an economic interest
> passed to other beneficiaries of the trust; and
> (4) whether the taxpayer felt bound by any restrictions
> imposed by the trust itself or by the law of trusts.
> * * * [Citations omitted.]

### (3) Grantor Trust Provisions

Under specified circumstances, the statutory grantor trust
provisions, sections 671-679, treat the grantor of the trust and,
sometimes, a third party, as the substantial owner of all or part
of the trust. Trust income is taxed to the substantial owner
under the rules of section 671. Because the conditions imposed
by each of the grantor trust provisions are independent of those
imposed by the others, the grantor can avoid taxation only if
(1) he does not possess a disqualifying reversionary interest,
sec. 673, (2) the trust cannot be revoked by the grantor or a
nonadverse party, sec. 676, (3) trust income cannot be
distributed to the grantor or the grantor's spouse or be used to
pay for insurance on their lives without the consent of an
adverse party, sec. 677, (4) specified powers to control

beneficial enjoyment of the corpus or income are not vested in the grantor or certain other persons (sec. 674), and (5) certain administrative powers are not exercisable by the grantor or a nonadverse party (sec. 675).

(4) Discusssion

The facts establish that one or both of the J. Shirleys performed services for which payment was made and neither reported any compensation, either directly or indirectly (e.g, by way of salary), for performing such services.  Clearly, in prior years, they had treated one or both of themselves as the true earner of income from computer consulting.  As evidence of that, we have deemed admissions that they treated such income as self-employment income.  Self-employment income is generally synonymous with the net earnings derived from a trade or business, or profession, carried on as a sole proprietor or as a partner.  See sec. 1.1401-1(c), Income Tax Regs.; Durando v. United States, 70 F.3d 548, 551 (9th Cir. 1995) (self-employment tax provisions explicitly encompass income derived from a sole proprietorship or a partnership).  The J. Shirleys have proved no fact to contradict the inference that they continued that sole-proprietorship (or partnership) during 1995, the year in issue. They exercised control over Alexion Trust, and they have proved no fact to indicate that their control was less than complete. They have failed to prove that they did not retain sufficient

power and control over Alexion Trust's receipt of income that such income should not be taxed to them. See Barmes v. Commissioner, supra. They also have failed to prove that Alexion Trust should not be disregarded as a sham, since the transfer in trust lacked economic substance. See discussion of relevant factors, sec. II.A.3.a.(2) supra, as set forth in Muhich v. Commissioner, supra. Finally, they have failed to prove that one or both of them should not be treated as the owner of all or a portion of Alexion Trust on account of application of one or more of the grantor trust rules found in sections 673 through 676. Accordingly, we find that, during 1995, one or both of the J. Shirleys earned gross income in the amount of $179,791, from providing computer consulting services, which income, in the amount of $166,042, the J. Shirleys failed to include in gross income.

### b. Deductions

On brief, the J. Shirleys argue that they should be allowed deductions, totaling $78,260, claimed by Alexion Trust in computing its net profit from computer consulting of $101,531. Respondent denied those deductions to Alexion Trust on various grounds, including Alexion Trust's failure to establish that the underlying expenses were deductible under section 162, which allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or

business, and its failure to substantiate that it had paid or incurred any expenses. In their respective petitions, neither the J. Shirleys nor Alexion Trust has averred any facts supporting a claim to the deductions in question. The only expense of which we have any knowledge is Alexion Trust's claim of a rental expense of $42,000 paid to Caralan Trust for property used by the J. Shirleys as their personal residence. We fail to understand the basis of that deduction to Alexion Trust. Indeed, the J. Shirleys have shown us so little about the consulting activities performed by the J. Shirleys that we are unable to conclude that, in performing those activities, they incurred any deductible expenses. While it is within the purview of this Court to estimate the amount of allowable deductions where there is evidence that deductible expenses were incurred, Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), we must have some basis on which an estimate may be made, Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985); see also Norgaard v. Commissioner, 939 F.2d 874, 879 (9th Cir. 1991). Because the record contains no evidence upon which we could base such an estimate, we conclude that the J. Shirleys have failed to prove that they are entitled to claim any deductions under section 162(a) or any other section.

c. <u>Depreciation</u>

The J. Shirleys claimed a deduction for depreciation in the amount of $19,896 on account of property used by them as (and in) their personal residence.  Such property constituted part of the rental activity, which Caralan Trust reported as involving the rental of such property to Alexion Trust.  Respondent disallowed the whole amount of such depreciation.

In pertinent part, section 167 provides:

SEC. 167.  DEPRECIATION.

   (a) General Rule.--There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)--

      (1) of property used in the trade or business, or

      (2) of property held for the production of income.

                *    *    *    *    *    *    *

   (d) Life tenants and beneficiaries of trusts and estates.--* * * In the case of property held in trust, the allowable deduction shall be apportioned between the income beneficiaries and the trustee in accordance with the pertinent provisions of the instrument creating the trust, or, in the absence of such provisions, on the basis of the trust income allocable to each.  * * *

Caralan Trust apportioned 100 percent of the $19,896 depreciation deduction to the J. Shirleys notwithstanding that they received only $13,753 (17.81 percent) of the $77,234 distribution of income made by the Caralan Trust to the J. Shirleys and the J E Shirley Trust (which trust received

$63,481 (82.19 percent) of that distribution). A document purporting to be the contract by which was created the Caralan Trust is in evidence. It does not apportion the depreciation in question to the J. Shirleys. Given the amount of the trust's income and the relative size of the income distribution to the J. Shirleys, they are entitled to no more than 17.81 percent of any deduction for depreciation on property held by the trust. See sec. 1.167(h)-1(b)(2), Income Tax Regs. (depreciation on trust property is split in proportion to income unless the governing instrument or local law requires or permits the trustee to maintain a reserve for depreciation and such reserve is in fact maintained). Moreover, the J. Shirleys have failed to prove any property held by Caralan Trust was property used in a trade or business, or held for the production of income, for which a depreciation deduction is available under section 167(a). We have found that the claimed depreciation deduction of $19,896 was with respect to property that the J. Shirleys used as (and in) their personal residence. Generally, no deduction is allowed "for personal, living, or family expenses." Sec. 262(a). The J. Shirleys have proposed no facts with respect to the activities of Caralan Trust that could lead us to find that the property in question was used in a trade or business or was held for the production of income. Apparently, the property was rented to Alexion Trust at a loss in a transaction that, from the

perspective of either Alexion Trust or Caralan Trust, makes no sense.

The J. Shirleys have failed to prove facts entitling them to the depreciation deduction of $19,896 claimed by them, and we sustain respondent's determination of a deficiency to the extent based on his disallowance of such deduction.

### B. Penalties

#### 1. Section 6662(a)

Section 6662(a) provides for an accuracy-related penalty (the accuracy-related penalty) in the amount of 20 percent of the portion of any underpayment attributable to, among other things, negligence or intentional disregard of rules or regulations (without distinction, negligence), any substantial understatement of income tax, or any substantial valuation misstatement. Respondent determined the accuracy-related penalty against the J. Shirleys. Although the J. Shirleys' notice states that respondent bases his imposition of the section 6662(a) accuracy-related penalty upon "1 or more" of the three grounds listed in section 6662(b)(1) through (3), on brief, respondent relies only on his claims that the J. Shirleys were negligent or substantially understated their income tax.

Respondent bears the burden of production with respect to all penalties. See sec. 7491(c). The burden imposed by section 7491(c) is only to come forward with evidence regarding the

appropriateness of applying a particular addition to tax or penalty to the taxpayer.  Respondent need not negate all defenses to the additions or penalties.  See Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Respondent has met his burden with respect to his claim of negligence by establishing that the J. Shirleys, in understating their income and claiming improper and unsubstantiated deductions, were negligent and disregarded rules and regulations.  Further, the deficiency we have redetermined indicates a substantial understatement of income. See sec. 6662(d).  On brief, the J. Shirleys fail to address respondent's determination of an accuracy-related penalty.  We assume that they rely exclusively on our finding that there was no deficiency in tax.  Since we have found a deficiency in tax, we sustain respondent's determination of a penalty under section 6662(a) on the grounds of either negligence or substantial understatement of income, modified only to take account of the amount of the deficiency that we have determined.

    2.  Section 6673(a)(1)

Respondent asks that we impose a penalty against the J. Shirleys under section 6673(a)(1).  That section provides:

    SEC. 6673.  SANCTIONS AND COSTS AWARDED BY COURTS.

       (a)  Tax Court Proceedings.--

          (1) Procedures instituted primarily for delay,
          etc.--Whenever it appears to the Tax Court that--

(A) proceedings before it have been instituted or maintained by the taxpayer primarily for delay,

(B) the taxpayer's position in such proceeding is frivolous or groundless, or

(C) the taxpayer unreasonably failed to pursue available administrative remedies,

the Tax Court, in its decision, may require the taxpayer to pay to the United States a penalty not in excess of $25,000.

The purpose of section 6673 is to compel taxpayers to think and to conform their conduct to settled principles before they file returns and litigate. Coleman v. Commissioner, 791 F.2d 68, 71 (7th Cir. 1986); see also Grasselli v. Commissioner, T.C. Memo. 1994-581 (quoting Coleman). A petition to the U.S. Tax Court is frivolous if it is contrary to established law and unsupported by a reasoned, colorable argument for change in the law. We need not find specific damages to impose a penalty under section 6673(a)(1); rather, that section is a penalty provision, intended to deter and penalize frivolous claims and positions in deficiency proceedings. Bagby v. Commissioner, 102 T.C. 596, 613-614 (1994). The J. Shirleys do not here argue for any change in the law, and there are numerous cases that establish that taxpayers cannot use trusts, as the J. Shirleys have attempted to do, to avoid tax or shift income from one taxpayer to another. See, e.g., Zmuda v. Commissioner, 79 T.C. 714 (1982); Vercio v. Commissioner, 73 T.C. 1246 (1980); Wesenberg v. Commissioner, 69 T.C. 1005 (1978); Barmes v. Commissioner, T.C. Memo. 2001-155;

<u>Matrixinfosys Trust v. Commissioner</u>, T.C. Memo. 2001-133; <u>Muhich v. Commissioner</u>, T.C. Memo. 1999-192; <u>Alsop v. Commissioner</u>, T.C. Memo. 1999-172; <u>Harrold v. Commissioner</u>, T.C. Memo. 1991-274, affd. 960 F.2d 1053 (8th Cir. 1992); <u>Vnuk v. Commissioner</u>, T.C. Memo. 1979-164, affd. 621 F.2d 1318 (8th Cir. 1980). For the reasons that follow, we also believe that they instituted, and have maintained, this proceeding primarily for delay.

We have found facts sufficient for us to conclude that the J. Shirleys did not cooperate with respondent's agent during her examination of the J. Shirleys' 1995 return. No doubt some or all of the redundancies in respondent's adjustments that he has since conceded could have been avoided had they cooperated. Nor did the J. Shirleys cooperate with respondent's counsel in preparing this case for trial. They failed to answer respondent's requests for admissions. Respondent claims, and they do not deny, that they failed to respond to requests for discovery and refused to participate in the stipulation of facts process until the eve of trial. They failed to comply with the requirements of our standing pretrial order that (1) they file a trial memorandum and (2) to the extent documents intended to be introduced into evidence cannot be stipulated, such documents be identified in writing and exchanged 15 days before trial. At trial, they failed to present evidence regarding any of the adjustments giving rise to the deficiency. They orally objected

to one of respondent's witnesses testifying under a pseudonym, but failed to file any reply to respondent's written response to their objection.  They were more than 6 months tardy in responding to our order of June 14, 2000, that they make a motion to substitute parties and change caption.  They requested a briefing schedule, and the Court ordered briefs, yet their brief fails to address the substance of respondent's adjustments.  In their brief, they fail to make any specific reference to any page of the transcript of trial or reference any exhibit.  We infer from their failure adequately to brief the issues in this case a lack of legitimate purpose in instituting this proceeding.  They failed to file an answering brief, and, thus, let stand, unrebutted, 141 proposed findings of fact made by respondent.  They established the Alexion and Caralan Trusts, which invoked, and then disavowed, the jurisdiction of this Court.

The J. Shirleys instituted and maintained these proceedings primarily for delay; their positions in this proceeding are frivolous and groundless, and they unreasonably failed to pursue administrative remedies.  We, therefore, shall require them to pay a penalty under section 6673(a)(1) of $12,500.

III.  The C. Shirleys

    A.  Deficiency in Tax

        1.  Introduction

C E Shirley Trust reported as income the income distribution of $63,481 received from Caralan Trust.  It deducted $286 on account of a distribution of income to Congo Trust.  It computed a depreciation deduction of $647 and apportioned that deduction in full to Congo Trust.  Congo Trust took into account both of those items.  It also reported rental receipts of $12,000 on account of a rental activity involving the C. Shirleys' principal residence.  It claimed related deductions (not including depreciation) of $23,101, giving rise to a loss of $11,101.  Congo Trust computed a depreciation deduction of $8,558, which it apportioned to the C. Shirleys.  The only trust-related item on the C. Shirleys' 1995 return is a deduction of $10,463 on account of unreimbursed expenses related to Congo Trust.

Respondent determined a deficiency in the C. Shirleys' tax by notice dated August 5, 1999 (the C. Shirleys' notice).  One adjustment giving rise to that determination is a positive adjustment to the C. Shirleys' gross income of $12,000, which increase is attributable to $12,000 of rental income reported on the Congo Trust 1995 return.  Respondent concedes that adjustment.  A second adjustment is a negative adjustment of $10,463, reflecting the C. Shirleys' deduction of $10,463 on

account of unreimbursed expenses related to Congo Trust. Respondent concedes that adjustment on the ground that it was a mistake (it should have been a positive adjustment). A third adjustment is a positive adjustment in the amount of $65,951 on account of trust "gross receipts". From respondent's trial memorandum, we learn that such third adjustment combines two adjustments, the first being an adjustment of $63,481, on account of the income distribution received by the C E Shirley Trust, and the second being an adjustment of $2,470 on account of gross receipts from business omitted from gross income by the C. Shirleys. Respondent concedes the $63,481 adjustment on the ground that it duplicates, in part, the adjustment made to the J. Shirleys' gross income on account of Alexion Trust's gross receipts. The $2,470 adjustment constitutes a new matter, on which respondent bears the burden of proof. See Rule 142(a). We accept respondent's concessions and agree he bears the burden of proof with respect to the $2,470 item.

Given respondent's concessions, we are left to consider three positive adjustments: interest income of $25, unreported deposits of $33,980, and unreported business gross receipts of $2,470.

### 2. Discussion

In the C. Shirleys' notice of deficiency, respondent's ground for the interest adjustment is: "All interest income is

includable in income unless specifically exempted by law."
Respondent's ground for the unreported deposits of $33,980 is:
"Business gross receipts were not included in the amount shown."
During 1995, Curtis Shirley was self-employed as a computer
consultant, performing those services, personally, for
compensation.  The C. Shirleys had one or more bank accounts, and
Curtis Shirley extended credit to his customers.  On the
C. Shirleys' 1995 return, they reported no income from any
source.  Section 61(a)(4) includes interest as an item of gross
income.  Together, section 61(a)(1) and (2) include as items of
gross income, compensation for services, including fees,
commissions, fringe benefits, and similar items, and gross income
derived from business.  Not only has respondent shown likely
sources for the income items in question, but, with respect to
the $33,980 of unreported deposits, a bank deposit is prima facie
evidence of income and respondent need not prove a likely source
of that income.  Tokarski v. Commissioner, 87 T.C. 74 (1986); see
also Factor v. Commissioner, 281 F.2d 100, 116 n.28 (9th Cir.
1960).  The C. Shirleys have proposed no findings of fact
relative to either the interest income or the bank deposits.
They have failed to prove that they did not have the interest
income in question, and we find that they did have unreported
income of $33,890.

In 1995, Curtis Shirley personally performed computer consulting services for Ventana.  In December 1995, checks totaling $2,470 were issued by Ventana for those services, made out to "C.E. Shirley", which checks were cashed by Curtis E. Shirley.  On brief, respondent states the issue as whether the C. Shirleys understated their 1995 Form 1040 Schedule C (business) gross receipts by $2,470.  The item in question is an item of gross income, either as compensation for services or as business gross receipts.  See sec. 61(a)(1) and (2).  The C. Shirleys failed to report it on the C. Shirleys' 1995 return.  The endorsement on the two checks in evidence reads "Curtis E. Shirley", without any qualification, which is consistent with the named payee:  "C.E. Shirley".  Notwithstanding some ambiguity as to the identity of the payees (Curtis E. Shirley or the C E Shirley Trust), we infer from that endorsement that the checks were payable to Curtis E. Shirley.  We find that he omitted from gross income $2,470 on account thereof.

B.  Penalties

1.  Section 6662(a)

Respondent determined a section 6662(a) penalty against the C. Shirleys in language identical to that used with respect to the J. Shirleys, except for the amount of the penalty.  On brief, the C. Shirleys, like the J. Shirleys, fail to address that penalty.  Our analysis is the same with respect to the

C. Shirleys as it is for the J. Shirleys, and we shall not repeat it.  We sustain the penalty on the same grounds, modified only to take account of the deficiency that we have determined.

2.  Section 6673(a)(1)

We likewise impose a penalty under section 6673(a)(1) against the C. Shirleys for substantially the same reasons that motivated us with respect to the J. Shirleys.  The C. Shirleys did not fail to reply to admissions, since they were not served with any.  Their petition, however, is replete with frivolous and groundless claims.  For example:

> The Notice of Deficiency is required by the Internal Revenue Code to be signed by a duly appointed assessment officer.  There is nothing to indicate that the person signing (rubber-stamped signature) the Notice of Deficiency or the Form 4549-A attachment (unsigned) are [sic] duly authorized to perform that function.  Internal Revenue Code §6201 and 26 USC §6065, clearly defines that a duly authorized signature be present on these forms.  Petitioners have no means to confirm that the signatures are that of a duly authorized person.

> Petitioners, on information and belief, alleges [sic] that the sole purpose of the respondent's Notice of Deficiency is for the obvious purpose of ensnaring the Petitioners into a fraudulently obtained Federal Tax Court jurisdiction.  Petitioners' position is that the respondent knew or should have known that he has violated the petitioners' right of due process in forcing this filing.

> On the provision that the Petitioners are properly documented in their "Individual Master File" (IMF), this [sic] petitioners' source of revenue is from within the several states and does not conform to any federally regulated "taxable objects".  The petitioners do not fall under the definition found in the IRC 3121(h), since the petitioners do not reside in the

District of Columbia or are employed by the [Federal] government.

We reach the same conclusions with respect to the C. Shirleys that we reach with respect to the J. Shirleys. Although the C. Shirleys' deficiency in tax is less than the J. Shirleys', the C. Shirleys' petition clearly evidences their willfulness in disregarding settled principles before they decided to litigate. We, therefore, shall require them to pay a penalty under section 6673(a)(1) of $12,500.

An order of dismissal for lack of jurisdiction will be entered in docket No. 17076-99.  Appropriate orders will be issued, and decisions will be entered under Rule 155 in docket Nos. 10151-99, 10152-99, 10153-99, 17074-99, and 17075-99.